REBECCA JERNIGAN v. BLACKMAN JERNIGAN.

(Filed 25 February, 1920.)

**Judgments—Excusable Neglect—Motion to Set Aside—Appeal and Error —Negligence.**

> Where it is found as a fact by the Superior Court judge, in denying a motion to set aside a judgment for excusable neglect, that, though the defendant was sick, his illness did not impair his faculties to the extent of preventing him from attending efficiently to his case, and he had shown himself fully capable of attending to this and other matters of litigation, and to his business interests generally, at his home, to which he was confined, and that the present action being in another county, he did not employ attorneys therein, and wrote only to nonresident attorneys at the time of placing the matter in their hands for attention, and gave it no further consideration, and judgment final, for the want of an answer, was eventually taken against him: *Held*, such facts did not show the attention of a man of ordinary prudence to his own affairs; that the fact that he had not employed attorneys practicing in the county of trial could be considered on the question of his neglect, and under this and the further facts found showing inexcusable indifference to the case, the motion was properly denied.

MOTION to set aside judgment upon the ground of excusable neglect, heard by *Connor, J.,* at his chambers in Wilson, N. C., by consent of the parties and attorneys, on 28 November, 1919.

The plaintiff alleged in her complaint that a certain deed executed by her to her husband was void, and asked that it be set aside. The defendant failed to appear or plead, and judgment by default, for want of an answer, was entered accordingly. Defendant moved to set aside this judgment for excusable neglect of the defendant, who was their father, and now deceased.

The court found the following facts: "That the summons in the action was issued by the clerk of the Superior Court of Harnett County on the 6th of May, 1916, returnable to the May term of said court, and was personally served on the defendant, Blackman Jernigan, then living

in Johnston County, by the sheriff of said county, on the 11th day of May, 1916; that a duly verified complaint was filed under authority of a special order made in this action on the 3d day of July, 1916, and no appearance having been entered, and no answer filed, a judgment by default final was rendered in favor of plaintiff and against defendant, pertaining to real estate, at September Term, 1916, of this court.

"2. That defendant, Blackman Jernigan, died on 7th day of June, 1917, and that the defendants, who file this motion, are his heirs at law and devisees named in his last will and testament.

"3. That said heirs at law and devisees, through their attorneys, now move to set aside the judgment by default final entered at September Term, 1917, and within one year from rendition of the same as determined by the Supreme Court in an appeal from the judgment rendered at February Term, 1919.

"4. That defendant, Blackman Jernigan, wrote a letter to attorneys at law, residing at Smithfield, N. C., as soon as the summons was served on him, requesting them to represent him in this action, and soon thereafter received from the attorneys a letter advising him that they would represent him; and said attorneys are and were reputable and reliable, and regularly practiced in the courts of Johnston County; but that they do not regularly practice in Harnett County, and do not regularly attend the courts of that county; that they did not enter an appearance for Blackman Jernigan, nor did they file an answer to the complaint herein; that there is no evidence from which the court can find that any other or further communication was had, by letter or otherwise, between the said Blackman Jernigan and the said attorneys, relative to this action, or to any other matter; that from the date of the service of the summons in this action on him to the date of his death, Blackman Jernigan resided in or near the town of Benson, in Johnston County, and his attorneys resided in the town of Smithfield, in said county.

"5. That Blackman Jernigan was on the date of the service of summons in this action on him, and continuously to the date of his death, confined to his home by sickness, and was physically unable to attend court or to leave his home to attend to any business whatever.

"6. That Blackman Jernigan, during the months of August and September, 1916, and during the months of January, February, and March, 1917, bought and sold land and conducted business transactions involving large sums of money. He executed and received deeds and directed the management of his business.

"7. That two actions were pending in the courts of Johnston County against the said Blackman Jernigan during the fall of 1916; that he filed answers in both said actions, and by his attorneys contested the same in said courts; that the deposition of Blackman Jernigan was taken

in March, 1917, and was used in his behalf in the trial of the case of *Lucy E. Hays v. Blackman Jernigan* in the Johnston County court.

"8. That Blackman Jernigan was continuously, between the date of the service of the summons in this action upon him, and the date of his death, mentally capable of attending to business, and of communicating by letter and otherwise with persons relative to business matters.

"9. That the plaintiff, Rebecca Jernigan, was the wife of Blackman Jernigan; that no children were born of their marriage; that the land which is the subject-matter of this action was owned by Rebecca Jernigan prior to her marriage, and was, after the marriage, and while she was living with her husband, conveyed by her and her husband to M. C. Butler, who, contemporaneously with the conveyance of the land to him, conveyed the same to Blackman Jernigan; that thereafter Blackman Jernigan ceased to live with the said Rebecca Jernigan, and the purpose of this action was to have the two deeds declared void for the reason set out in the complaint; that the affidavits filed herein by the heirs at law and the devisees of the defendant, Blackman Jernigan, and the answer tendered to the court, disclose a meritorious defense to the plaintiff's cause of action.

"Upon the foregoing facts, the court was of the opinion, and so held, that the failure of Blackman Jernigan to file an answer to the complaint was not due to any mistake, inadvertence, surprise, or excusable neglect on his part, and that the motion to set aside the judgment rendered by default at September Term, 1916, ought to be, as a matter of law, denied.

"It is therefore ordered and adjudged that the said motion be, and the same is, denied, and that the plaintiff recover of the defendants, heirs at law and devisees of Blackman Jernigan, the costs incurred upon this motion."

Defendants excepted, and appealed.

*Godwin & Williams, E. F. Young, and Robert W. Winston for plaintiff.*

*C. L. Guy and Clifford & Townsend for defendants.*

WALKER, J., after stating the facts: We are of the opinion that the order of Judge Connor refusing to disturb the judgment was plainly correct. It is now almost an axiom to say that persons of sound mind, who are served with process to appear in an action and answer a complaint, should be active and diligent in the protection and preservation of their rights, and the least that can be expected of them is that they will give the case that attention which a man of ordinary prudence usually bestows upon his important business. If he fails in this respect he can have no relief under the statute in the way of vacating the judg-

JERNIGAN *v.* JERNIGAN.

ment, which has been entered because of his default in appearing and pleading. *Sluder v. Rollins,* 76 N. C., 271; *Roberts v. Allman,* 106 N. C., 394; *School v. Peirce,* 163 N. C., 427; *McLeod v. Gooch,* 162 N. C., 122; *White v. Rees,* 150 N. C., 678; *Pierce v. Eller,* 167 N. C., 672. The law does not favor those who sleep upon their rights, but those who are vigilant, and give them proper attention. This is a very ancient maxim, and it has frequently been applied by us to cases of this kind. *School v. Peirce, supra.*

Applying this principle to our case, we find the facts to be, as stated by the learned judge, that the original defendant against whom the judgment was rendered, was at the time of perfectly sound mind; he retained attorneys, who lived in his own county, not far from his home; he had other cases to which he gave the requisite attention, and he was capable of guarding his interest in this case, and of consulting with his attorneys in regard to it, and filing his answer. The mere fact that he was sick is not, of itself, sufficient to excuse him, for the judge finds that, notwithstanding his illness, he was able to have his answer prepared and filed. It was said in *Pierce v. Ella, supra,* that "the defendants (in that case), it is true, were old and feeble, but there is no finding that they are not of sound mind," and their neglect to answer was not excused. Here it is affirmatively found that the defendant was of sound mind, though enfeebled by disease, and not able to leave his home, and that he had actually attended to his ordinary affairs efficiently and in the usual way, except as above indicated. The court found, as will appear, by reference to the statement of facts, that he had directed the management of his business, and even the other litigation then pending, and especially that he had filed answers in two civil actions during the period of his sickness and confinement at his home. It appears that, notwithstanding the ability of Blackman Jernigan to file his answer, he never wrote but one letter to his attorneys about the business, and that was when he retained them to appear for him, and he took no further steps himself to see that an answer was filed. We have held, as before indicated, that a party has no right to abandon all active prosecution of his case simply because he has secured counsel to represent him in it. *McLeod v. Gooch, supra.* It further appears that he employed attorneys not residing in Harnett County, where the case was pending, and not practicing in its courts. The learned judge could consider this fact upon the question of negligence. *Manning v. R. R.,* 122 N. C., 824; *Osborn v. Leach,* 133 N. C., 428; *Williamson v. Cocke,* 124 N. C., 585; *Hardware Co. v. Buhmann,* 159 N. C., 511; *McLeod v. Gooch, supra.* As said by this Court in *Kerchner v. Baker,* 82 N. C., 169, and affirmed in *White v. Rees,* 150 N. C., 678: "The course of the defendant was not the care of an ordinary prudent man in reference to his own personal interest, nor was

it consistent with the proper deference and attention due from the defendant and every suitor to the known and orderly course and practice of the courts in the administration of the law.   'The defendants have lost their rights, if they had any to protect, by their own inattention and inexcusable neglect.' "   We added in *White v. Rees, supra:* "The defendants have lost their rights, if they had any to protect, by their own inattention and inexcusable neglect."   There is no finding that Blackman Jernigan was prevented by illness, or other reasonable cause, from communicating with his counsel, and thereby making known to them his defense, but the contrary is stated as the fact, and the cases where that appeared, such as *Mebane v. Mebane,* 80 N. C., 34, do not apply.

The facts present a case of inexcusable neglect within the meaning of the statute, and the decision of the court was correct.

Affirmed.